# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MICHAEL DEFRENZA,<br><br>Plaintiff,<br><br>v.<br><br>PROGRESSIVE EXPRESS<br>INSURANCE COMPANY,<br><br>Defendant. | CASE NO. 1:16-CV-00736-AWI-JLT<br><br>**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 16) |

Defendant Progressive Express Insurance Company ("Progressive" or "Defendant") submits to this Court a motion for summary judgment, or in the alternative, partial summary judgment (Doc. 16), on Plaintiff John Michael DeFrenza's ("DeFrenza" or "Plaintiff") single claim that Progressive acted in bad faith in resolving his uninsured motorist insurance claim. DeFrenza was in an accident on September 18, 2011 and did not receive a settlement from Progressive until April 2, 2015, almost 3 and a half years later. This matter is now fully briefed. For the reasons that follow, Progressive's motion for summary adjudication will be granted in part and denied in part.

# **FACTUAL BACKGROUND**[1]

DeFrenza was a "Rated Driver" under a Progressive Commercial Automobile Insurance Policy, Number 06764199-5 (the "Policy"), issued to DeFrenza's employer, Ross Fabrication and Welding Inc. ("Ross"), with a policy period of June 12, 2011 through December 12, 2011, and including Underinsured Motorist coverage with a combined single limit of $750,000. SUMF 1. DeFrenza had underinsured motorist coverage through his own carrier, AAA, with a limit of $250,000/500,000. SUMF 2. Coverage was pro-rated between the two carriers. SUMF 3.

On September 18, 2011, DeFrenza and a co-worker were driving a pickup truck owned by Ross to a jobsite, when it was struck by a 1999 Chevrolet Astro Van. SUMF 4. The driver of the Astro Van, who was at fault, struck DeFrenza's vehicle at 30 to 35 miles per hour while running a red light, and spun DeFrenza's vehicle clockwise. Doc. 20 at 6-7. The 2011 Ford F-150 pickup truck DeFrenza was driving, which was less than a year old, was totaled. Doc. 20 at 6.

On August 13, 2012, Progressive confirmed DeFrenza would present an Uninsured Motorist ("UIM") claim through his attorney, Brandon Holladay. SUMF 5. DeFrenza filed a first party UIM claim on or about October 10, 2012. Doc. 20 at 8. On October 10, 2012, after confirming DeFrenza's policy-limits settlement with the at-fault driver, Progressive opened the UIM claim. SUMF 6.

On October 12, 2012, three days after the claim was opened, Emy Liberty ("Liberty") confirmed UIM coverage was in order, with limits of $735,000 ($750,000 – 15,000), and documented the amount of coverage in the claim file. DSUF 7. While confirming coverage, Liberty noted initial questions about DeFrenza's own UIM coverage and a possible offset for worker's compensation coverage. DSUF 8. On October 23, 2012, Rowena Pavlinac entered her own coverage statement again affirming the amount of UIM coverage and noting the need to rule out worker's compensation and whether DeFrenza had his own UIM coverage. Pavlinac documented the amount of UIM coverage in the claim file. DSUF 9.

---

[1] "SUMF" refers to Defendant's Statement of Undisputed Material Facts that Plaintiff also concedes are undisputed in his opposition to the motion. "SUMF" also refers to any of Defendant's facts to which Plaintiff was unable to dispute with any citation to evidence. "DSUF" refers to "Defendant's Statement of Undisputed Facts," and "PSUF" refers to "Plaintiff's Statement of Undisputed Facts."

On October 25, 2012, Holladay's office told Pavlinac they had no medical records for DeFrenza but would send them when they became available. SUMF 10. On November 20, 2012, Pavlinac wrote and left a voicemail message for Holladay following up on her requests for information. SUMF 11. On January 24, 2013, Pavlinac again spoke with Holladay, who represented that he would provide medical authorizations and confirmation of DeFrenza's personal UIM coverage. SUMF 12. On February 4, 2013, Holladay sent a demand letter for the policy limits of $735,000. SUMF 13. On February 4, 2013, Holladay represented that DeFrenza had no personal UIM coverage. SUMF 14. On February 4, 2013, Holladay stated that DeFrenza was anticipated to undergo two additional surgeries. SUMF 15. On February 4, 2013, Holladay did not return the medical authorizations. SUMF 16. On February 4, 2013, Holladay provided 365 pages of medical records relating to DeFrenza's treatment, along with wage information. SUMF 17. On or about February 8, 2013,[2] DeFrenza made a demand to Progressive to pay the underlying UIM policy limits of $735,000. Doc. 20 at 8.

On February 15, 2013, Pavlinac told Holladay she required all of DeFrenza's prior Kaiser records, not just the surgery records. SUMF 18. On March 8, 2013, at Progressive's request, Holladay provided what he represented were DeFrenza's medical records for three years prior to the accident. SUMF 19. On April 10, 2013, Pavlinac sent Holladay a letter requesting the promised medical authorizations and AAA declarations page. SUMF 20. On April 10, 2013, after speaking with Holladay and explaining the medical records provided were incomplete, Pavlinac again asked for complete medical records and billings. SUMF 21. Holladay never returned the signed medical authorizations. SUMF 22.

On April 29, 2013, Holladay asked for Progressive's settlement position, Pavlinac advised Holladay that she needed to review specific coverage issues, including whether worker's compensation applied, and possible additional UMBI coverage through DeFrenza's policy with AAA, which up to that date had not been notified of a potential claim. SUMF 23. On June 14, 2013, Holladay—while continuing to demand policy limits—asked that Progressive make an offer of the "undisputed value" of DeFrenza's injuries "even if they are keeping believe [sic] that a

---

[2] DeFrenza's reference to 2012 appears to be a typo.

3

reduction should be taken against the worker's compensation benefit." SUMF 24.

On July 31, 2013, Pavlinac advised Holladay that Progressive would "not be able to make any payments . . . until we reach an agreement for the full amount of the claim." SUMF 25. On August 2, 2013, Pavlinac informed Holladay that Progressive still had not received DeFrenza's post-operative reports and requested updated medical records and billing. Holladay said he was unaware that Progressive did not have the updated medical records. SUMF 26. On August 13, 2013, Pavlinac advised Holladay that Progressive would not assert a workers' compensation offset and renewed her request for updated medical records. SUMF 27. August 26, 2013, Pavlinac received the updated Kaiser records and began her evaluation of DeFrenza's injury and medical records and billings. SUMF 28.

On August 27, 2013, assuming pro-rata coverage with AAA, Pavlinac arrived at a settlement range of $219,942 - 294,742 as Progressive's 88% share. SUMF 29. On September 4, 2013, using, *inter alia*, a different loss of earnings component, Pavlinac's manager reached a settlement range of $152,791 - 327,791. SUMF 30. On September 10, 2013, Holladay made a formal arbitration demand. SUMF 31. On September 17, 2013, Progressive offered the low end of its evaluation, $152,791 (as its pro-rated share), to settle DeFrenza's entire claim. SUMF 32.

On September 17, 2013, while making her offer of settlement, Pavlinac advised Holladay that the medical records he provided were neither numbered nor Bates-stamped, and that they made references to numerous procedures for which there were no corresponding records. SUMF 33. On September 17, 2013, Holladay told Progressive that it could obtain any additional necessary records via subpoena. SUMF 34. In a letter dated September 17, 2013, Holladay rejected the $152,791 offer, asserted that it constituted an "undisputed amount," and demanded immediate advance payment "while we move forward with the demanded arbitration." SUMF 35.

The basis for Holladay's demand for immediate payment of the settlement offer was language from the implementing regulations of the Fair Claims Practices Act found at Cal. Code.Regs. tit. 10 § 2695.7(h). SUMF 36. Progressive referred the arbitration defense to Richard Phillips ("Phillips"). SUMF 37. On October 11, 2013, Rowena Pavlinac ("Pavlinac") spoke with [Phillips] who had further researched Insurance Code 2695.7(h), and noted on its face it appears

4

Progressive ought to pay out its undisputed offer of $152,791. PSUF 6. On October 14, 2013, Phillips communicated to Holladay that the authority he relied upon for his argument that Progressive had a duty to advance an undisputed amount was inapposite. SUMF 38.

On October 28, 2013, Phillips and Pavlinac discussed the case and confirmed the value of the case was at a range of $350,000 to $450,000 with a target range of $390,000. However, no new offer was made after the original offer of $152,791 (offered on September 17, 2013). PSUF 7. Carolyn Nogy ("Nogy") PMQ for Progressive testified that each time a new value was placed on a claim the adjuster was to start at the low end of the settlement value and Progressive encouraged assertive negotiations as Progressive's goal was to settle the claims quickly as it was not Progressive's aim to delay claims in any manner. SUMF 9. Progressive failed to follow and/or comply with its own policy of adjusting its previous offers once new information was obtained that increased the projected settlement value of the case. PSUF 10.

During discovery, Kaiser provided nearly 1,500 pages of medical records pursuant to subpoena. SUMF 39. Progressive and AAA retained an expert, Brian Grossman, M.D., who opined that DeFrenza's injury-related complaints about his back and spine related back to previous injuries, prior surgery, and a history of strenuous work. DSUF 40. Michael Tivnon, M.D., a shoulder expert, performed an IME and opined that the need for both shoulder replacement surgeries was due to degeneration not the automobile accident. DSUF 41. Geoffrey Miller, M.D., an orthopedic surgeon, opined that at least one shoulder surgery and treatment to both shoulders and the cervical spine were directly related to the auto accident. Declaration of Seth O'Dell, Exh. C., Doc. 20-1 ("Miller Report") at 26-27.

On March 11, 2015, when the new adjuster Paul Nummelin ("Nummelin") completed a new evaluation for the DeFrenza case, and based on his review of the file information, he placed a settlement range with $243,232 at the low range and $518,232 as the high range for settlement. PSUF 8. On April 2, 2015, the parties resolved the claim at mediation for $400,000 ($300,000 from Progressive and $100,000 from AAA). SUMF 42. The settlement agreement, executed April 2, 2015, included a release of all claims "arising out of or in any way connected with [the accident], including all injuries and deaths, loss of services and consortium, and property damage,

resulting therefrom . . . ." SUMF 43.[3]  AAA advised Progressive that it placed a maximum value of $400,000 on DeFrenza's claim.  DSUF 44.[4]

### **LEGAL STANDARD**

Summary judgment is proper when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *United States v. Kapp*, 564 F.3d 1103, 1114 (9th Cir. 2009).  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 248; *Freecycle Sunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant.  *Soremekun*, 509 F.3d at 984.  Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim.  *See James River Ins. Co. v. Herbert Schenk, P.C.*, 523 F.3d 915, 923 (9th Cir. 2008); *Soremekun*, 509 F.3d at 984.  If a moving party

---

[3] In its motion, Progressive states that "[a]t the settlement, Progressive acknowledged its release did not encompass bad faith, as Holladay continued to claim Progressive was in bad faith for not extending the 'undisputed amount.'"  Doc. 16 at p. 11.

[4] Plaintiff's dispute with this fact refers to a voicemail in which an employee from AAA said she did not believe that $400,000 "will resolve it" (referring to the lawsuit).  This is not evidence that AAA placed a greater value than $400,000 on Plaintiff's injuries.

fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Nissan Fire*, 210 F.3d at 1103. The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008).

The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587; *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010). While a "justifiable inference" need not be the most likely or the most persuasive inference, a "justifiable inference" must still be rational or reasonable. *See Narayan*, 616 F.3d at 899. Summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2015); *see also Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1175 (9th Cir. 2003). Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Fitzgerald v. El Dorado Cnty.*, 94 F.Supp.3d 1155, 1163 (E.D. Cal. 2015); *Sanders v. City of Fresno*, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." *Del Carmen Guadalupe v. Agosto*, 299 F.3d 15, 23 (1st Cir. 2002); *see Bryant v. Adventist Health System/West*, 289 F.3d 1162, 1167 (9th Cir. 2002). The parties have the obligation to particularly identify material facts, and the court is not required to scour the record in search of a genuine disputed material fact. *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249-50; *Hardage v.*

*CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. *Nissan Fire*, 210 F.3d at 1103.

**DISCUSSION**

**1. Summary of the Parties' Positions on the Current Dispute**

Progressive characterizes DeFrenza's claim for breach of the covenant of good faith and fair dealing ("bad faith") as based upon three distinct theories: (1) Progressive failed to immediately tender its initial settlement offer – what DeFrenza terms "failure to pay undisputed covered parts of the claim;" (2) Progressive made an unreasonably low initial offer of settlement; and (3) Progressive unreasonably delayed resolution of the claim. If the Court is unable to grant the motion in full, Progressive requests discrete rulings that it did not commit bad faith based on one or more of DeFrenza's three theories for purposes of narrowing the case for trial. Progressive maintains that their actions were reasonable, timely, and thorough, and that they had no obligation to make advance payments on a claim in the absence of a settlement.

In DeFrenza's opposition to the motion ("Doc. 20"), DeFrenza addresses the three main theories of bad faith as outlined by Progressive, and argues that there are at least seven issues of fact that the jury must decide, namely:

1. Did Progressive intentionally delay its investigation into the facts and circumstances of Plaintiff's injuries;
2. Did Progressive breach its duty to investigate all aspects of Plaintiff's claim;
3. Did Progressive intentionally ignore evidence which supported coverage as to Plaintiff's injuries;
4. Did Progressive breach its duty to diligently search for evidence which supports its first party insured's claim;
5. Did Progressive seek to discover only the evidence that defeated the first party claim;
6. Did Progressive hold its own interest above that of the first party insured; and
7. Did Progressive fail to comply with its own internal policy to actively negotiate to resolve the case after each re-evaluation of the case was completed by an adjuster each time the

8

case values increased by starting at the low end of each new evolution.

DeFrenza argues that Progressive's actions in delaying to make a reasonable offer for years were done for the sole purpose of placing additional pressure on DeFrenza to settle the claim. DeFrenza was enduring increasing hardships due to lack of income and his inability to work after the auto accident in September 2011. Doc. 20 at 7. DeFrenza claims that due to the significant delay on the part of Progressive, his medical bills went into collections and he was forced to cash out money from his retirement, at a penalty, due to financial strain. See FAC. The medical records reflect that since the accident, DeFrenza had to have both shoulders replaced and is also a candidate for spinal surgery. To support these alleged material issues of disputed fact, DeFrenza mainly relies upon the declaration from his expert, Dan Jacobson ("Jacobson").

**2. DeFrenza's Expert in Support of his Opposition and Progressive's Objections**

Jacobson submitted a declaration in support of the opposition, in which he states he is an expert in the field of property/casualty insurance generally and specifically in the area of claims handling.

In relevant part, Jacobson provides the following opinions, as characterized by Plaintiff: Progressive "failed in attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim in which liability is reasonably clear." PSUF 1 (citing Declaration of Dan Jacobson, Doc. 20-2 ("Jacobson Decl.") at ¶¶ 7-20). Progressive "failed to provide a prompt and reasonable explanation for the basis it relied upon in relation to the facts or applicable law, for the delay in offer to Plaintiffs claims or for the offer of a compromise settlement." PSUF 3 (citing Jacobson Decl. at ¶ 16-17). Progressive "failed in its duty to diligently search for evidence which supports its insured's claim." PSUF 4 (citing Jacobson Decl. at ¶ 19).[5] Progressive was seeking to discover only the evidence that it needed to defeat and or reduce Plaintiff's claim and as such Progressive was holding its own interest above that of the Plaintiff. PSUF 5 (citing Jacobson Decl. at ¶ 18).

Progressive attacks the Jacobson declaration on a number of levels, including arguing that

---

[5] The cited expert testimony does not support Plaintiff's facts Nos. 4-5. In both instances, Plaintiff badly mischaracterizes the cited portions of Jacobson's declaration.

that he is unqualified as an expert. Jacobson was the Governor of the California Insurance Guarantee Association ("CIGA"), a quasi-governmental agency that operates as the property insurer of last resort. Jacobson Decl. at ¶¶ 1(a)-(b). In that role, Jacobson oversaw "adjust[ment] [of] a significant number of California's property" claims. Jacobson Decl. at ¶ 1(b). Jacobson "stud[ied] and learn[ed] the practices and standards in the California insurance industry." Jacobson Decl. at ¶ 1(e). Jacobson has also lectured and written scholarly articles on a wide range of insurance related topics. *See* Jacobson Decl. at ¶¶1(g), (j). Given Jacobson's significant experience, the Court disagrees that he is unqualified to opine on insurance practices. That in mind, the Court does not afford Jacobson any deference on the meaning of insurance law. The above-referenced opinions recite legal conclusions. They are not the appropriate subject of expert witness opinions. In sum, the Court will consider the underlying opinions regarding insurance industry practice. It will not accept the proposed legal conclusions that Jacobson (and Plaintiff) relay.

Further, Progressive has made evidentiary objections to portions of Jacobson's declaration. Aside from correctly noting that much of Jacobson's declaration contains improper expert testimony, those objections are without merit. Jacobson declaration contains sufficient detail to assure the Court that the permissible opinions and supporting factual basis are relevant to the issues at hand and would be admissible in some form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036-1037 (9th. Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.")[6]

### 3. Could Progressive's Refusal to Immediately Pay Amount Offered in the Original, Rejected Settlement Offer Constitute Bad Faith?

One of Plaintiff's theories of bad faith liability is that Progressive, by failing to pay the undisputed minimum amount due to compensate for Plaintiff's damages, operated in bad faith. *See* FAC at ¶ 45. Progressive acknowledges that it did not immediately pay out its initial settlement offer of $152,791.00 because DeFrenza did not accept the offer. Doc. 16 at 17. However, Progressive argues that the settlement offer was not an "undisputed amount," within the meaning

---

[6] Progressive may raise any evidentiary objections to the Jacobson testimony at trial.

of the California Fair Claims Settlement Practices Regulations such that it was obliged to immediately pay the amount. *See* Cal. Code Regs., tit. 10 § 2695.7(h). Progressive is correct.

As a general matter, under California law, an insurer may not withhold payment admittedly owed under one portion of the policy while it contests payment under a different portion of the policy. *See Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 921 (1978). However, a settlement offer does not become an undisputed amount due merely because both parties agree that a settlement amount should be no lower. *Aronson v. State Farm Ins. Co.*, 2000 U.S. Dist. Lexis 6976, *31-32 (C.D. Cal. May 9, 2000)("Assuming that [insurer] offered to settle the [uninsured motorist] claim for $40,000, that does not mean that $40,000 was the 'undisputed amount' of the claim…."); *see also Amini v. CSAA General Ins. Co.*, 2016 WL 6573949, *5 (D. Nev. Nov. 4, 2016); *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 592 n.8 (E.D. Pa. 1999) ("[T]he court is unwilling to infer that settlement authority invariably constitutes a final, objective assessment of a claim's worth to which an insurer may be held on penalty of bad faith."); *Voland v. Farmers Ins. Co. of Az.*, 189 Ariz. 448, 943 P.2d 808 (Az. Ct. App. 1997). In fact, that exact theory was presented to and was rejected by courts in this Circuit. *Beltran v. Allstate Ins. Co.*, 2001 WL 741806, *5 (S.D. Cal. June 25, 2001) (citing *Aronson v. State Farm Ins. Co.*, 2000 U.S. Dist. Lexis 6976, *31-32 (C.D Cal. May 9, 2000)). Plaintiff cites to no authority to the contrary.[7]

Insofar as Plaintiff's bad faith claim is premised upon Progressive's failure to immediately pay out its initial settlement offer of $152,710.00 as an "undisputed amount" owed, that claim fails as a matter of law. Summary adjudication on this theory will be granted in favor of Progressive.

**4. Did Progressive Delay in Bad Faith Its Resolution of DeFrenza's claim?**

The parties agree that DeFrenza was involved in an auto accident on September 18, 2011.

---

[7] DeFrenza's reliance on cases in which the insurer withheld undisputed med-pay benefits as leverage in a separate property damage claim is inapposite. *See Beck v. State Farm Mut. Auto. Ins. Co.*, 54 Cal.App.3d 347, 455 (Cal. Ct. App. 1976). In this case, Progressive provided a single coverage. The amount owed under that coverage was in dispute.

In this context, DeFrenza's reliance on *Storlie v. State Farm* is equally unavailing. In *Storlie*, the insured showed that the insurer may have failed to follow its own policy (gleaned from deposition testimony), permitting adjustors to advance the undisputed portions of the insured's uninsured motorist policy benefits prior to settlement of all claims. *Storlie v. State Farm Mut. Auto Ins. Co.*, 2011 WL 116881, *6-7 (D. Nev. Jan. 13, 2011). The Court explained that such a showing—even in absence of any case authority requiring the insurer to pay out undisputed claims—tended to show bad faith. *Storlie*, 2011 WL 116881 at *6-7. DeFrenza has made no such showing here.

11

DeFrenza suffered a covered loss. DeFrenza filed an uninsured motorist claim on October 10, 2012. DeFrenza demanded payment of policy limits on February 8, 2013. Progressive made a counter offer of $152,791.00 on September 12, 2013. That counter offer was rejected. The uninsured motorist claim settled for a total of $400,000.00 (300,000.00 of which was paid by Progressive).

It is unclear whether the parties agree on the scope of DeFrenza's bad faith delay claim. Progressive represents that "DeFrenza agreed during discovery that his claim of delay is based on pre-litigation activity…." Doc. 16 at 20; Declaration of Julia Azrael, Doc. 21 ("Azrael Decl.") at 13-14. Any delay as a result of arbitration, Progressive contends, is not part of the basis of DeFrenza's claim. Doc. 16 at 20. DeFrenza does not directly respond to Progressive's characterization of his claim or to the alleged agreement of the scope at discovery. His opposition is less than clear on the topic. From what the Court can glean from Jacobson's declaration, DeFrenza contends that the wrongful delay occurred when Progressive failed to respond to submission of the uninsured motorist claim, submitted no later than October 10, 2012, within 40 days. Jacobson Decl. at ¶ 11; *see* Cal. Code Regs., tit. 10 § 2695.7(b) (requiring an insurer "[u]pon receiving proof of claim ... immediately, but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in part.") Plaintiff further contends that Progressive failed to "continue to … request[]" information every thirty days until a determination regarding acceptance or denial is made. Jacobson Decl. at ¶ 16; *see* Cal. Code Regs., tit. 10 § 2695.7(c)(1). DeFrenza makes no other reference to delay by Progressive.[8]

Shortly after the uninsured motorist claim was opened, and certainly within 40 days, Progressive confirmed coverage under the policy. SUMF 7-9. After that time, Progressive's adjustors sought medical information from DeFrenza's then-counsel, Holladay. *See* SUMF 10-12. Apparently, no medical records were provided until February 4, 2013. SUMF 17. On the same date, DeFrenza demanded payment of the policy limit. SUMF 13. No medical information release authorization was provided. SUMF at 16. The medical records that were provided apparently

---

[8] DeFrenza mentions delay in investigation in his conclusion, Doc. 20 at 33, the Court assumes that the alleged delay in investigation correlates in time to the alleged failure to make a settlement offer and update DeFrenza regarding the status of the offer.

12

pertained only to DeFrenza's course of treatment. *See* SUMF 18. Approximately one month later, Holladay provided medical records for the prior three years to Progressive. SUMF at 19. Progressive continued to seek the medical record release authorization which was ultimately never provided. SUMF 22.

On August 26, 2013, Progressive was provided with updated medical records and "began … evaluation of DeFrenza's injury and medical records and billings" SUMF 28. On September 17, 2013, Progressive made its first settlement offer of $152,791.00. SUMF 32.

Neither party identifies in their moving papers when "proof of claim" was given for purposes of Section 2695.7(b). Jacobson suggests that proof of claim was given by October 9, 2012—the date that Progressive was notified of DeFrenza's claim. Jacobson Decl. at ¶ 9. However, neither party attempts to distinguish "proof of claim" from "notice of claim." *See* Cal. Code Regs. tit. § 2695.2(s) ("'Proof of claim' means any evidence or documentation ... that provides any evidence of the claim and that reasonably supports the magnitude or the amount of the claimed loss."); *compare* Cal. Code Regs. tit. 10 § 2695.5(e) ("Upon receiving notice of claim" an insurer must "provide to the claimant necessary … instructions, and reasonable assistance … specifying the information the claimant must provide for proof of claim.") *with* Cal. Code. Regs. tit. 10 § 2695.7(b)(1). It is not clear to the Court that the opening of an uninsured motorist claim or DeFrenza's counsel telling Progressive's adjustor about the scope of DeFrenza's injuries constituted proof of claim such that Section 2695.7(b) was triggered. It does not appear that any "evidence or documentation" supporting the "magnitude or amount of the loss" was submitted to Progressive at that time. Cal. Code. Regs. tit. 10 § 2695.2(s); *see Her v. State Farm Ins. Co.*, 92 F.Supp.3d 957, 971-972 (E.D. Cal. 2015). Even assuming that it was triggered, Progressive was without historical medical records and proof of the then-existing treatment plan needed to value the claim. Progressive repeatedly requested that information and it was not provided by DeFrenza's counsel. *See Igartua v. Mid-Century Ins. Co.*, ---F.Supp.3d----, 2017 WL 2803170, *3 (D. Nev. June 28, 2017) ("An insurer does not act in bad faith merely because it disagrees with the claimant's estimation of his injuries or delays paying out benefits until it receives relevant documents or expert opinions.") *Storlie*, 2011 WL 116881 at *6 (citing *Brandau*

13

*v. American Family Mut. Ins. Co.*, 2006 WL 1663557, *2 (D. Nev. June 14, 2006)).

There is no question that an initial settlement offer on DeFrenza's claim was not quickly made. What is absent is any indication that Progressive caused the delay prior to its initial settlement offer or, assuming Progressive was responsible, that the delay was caused in bad faith. No inference of bad faith can be drawn from the evidence submitted. Summary adjudication on this theory will be granted in favor of Progressive.

5. **Did Progressive's Failure to Update its Settlement Offer Constitute Bad Faith?**

DeFrenza appears to also contend that Progressive acted in bad faith when it failed to update its settlement offer when new information was received resulting in new settlement range calculations. *See* Doc. 20 at 8-9. Plaintiff's theory appears premised upon Progressive's purported policy for its adjustors, upon receipt of new relevant information, to "make a new offer representative of that new assessment of settlement value at the low end…." Deposition of Carolyn Nogy, Doc. 20-1 at 4-6 ("Nogy Decl.") at 40:16-22. Progressive does not substantively respond. Instead, Progressive contends that the argument is one that is outside of the allegations of the Complaint. It is correct. There is no hint in the complaint that such a theory would be advanced. *See* SAC at ¶ 62 (articulating the actions comprising bad faith insurance practices).

"[W]hen issues are raised in opposition to a motion to summary judgment that are outside the scope of the complaint, [t]he district court should [ ] construe[ ] [the matter raised] as a request pursuant to rule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings out of time." *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014); *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) (citation omitted). A plaintiff need not request that an opposition be construed as a motion for leave to amend and a plaintiff need not tender a formal amendment. *Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445 n. 2 (9th Cir. 1990) (citing *Simons v. United States*, 497 F.2d 1046, 1049 n. 2 (9th Cir. 1974)). Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Because the claims articulated in Plaintiffs' complaint were not refined by motions to dismiss, this Court would grant leave to amend if such amendment would not be futile, *see Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (citations omitted); *United States v.*

14

*Corinthian Colleges,* 665 F.3d 984, 995 (9th Cir. 2011), and if it would not prejudice the Defendant or cause undue delay, *Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Prejudice to the opposing party is the most important factor. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).

First the Court considers futility. DeFrenza indicates that on "October 28, 2013, [defense counsel] and [the insurance adjustor] discussed the case and confirmed the value of case (sic) at a range of $350,000.00 to $450,000.00 with a target range of $390,000.00. However, no new offer was made after the original offer of $152,791.00." PSUF 7[9]; Doc. 20 at 8. On March 11, 2015, a new adjustor for Progressive reevaluated the value settlement range based on the information then in the file and came to the conclusion that the settlement range was from 243,232.00 to $518,232.00. PSUF 8; Doc. 20 at 9. No new settlement offer was made.

Where an insurance company fails to follow its own procedures to the detriment of an insured an inference of bad faith can be drawn. *Bennett v. American Gen. Life Ins. Co.*, 2015 WL 12661909, *9 (C.D. Cal. Jan. 26, 2015); *Storlie*, 2011 WL 116881 at * 6-7; *see Copeland v. Liberty Life Assurance Co. of Boston*, 2015 WL 4194192, *4-5 (N.D. Cal. July 10, 2015); *Powers v. United Serv's Auto. Ass'n*, 114 Nev. 690, 702-703, 962 P.2d 596, 604 (1998).

Because there is some evidence that Progressive had a policy requiring its adjustors to make new settlement offers upon reevaluation of a claim regarding new evidence, and because the undisputed evidence submitted confirms that Progressive did not make new settlement offers when it reevaluated DeFrenza's claims, it does not appear that amendment to allege the new claim would be futile.

As to prejudice and undue delay, this action is in a late procedural stage —the parties were preparing to go to trial in January of 2018—and Plaintiff has not explained why he failed to seek amendment at an earlier date.[10] *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) ("Relevant to evaluating the delay issue is whether the moving party knew or should have

---

[9] Plaintiff cited to a portion of the "Claim File" not presented to the Court. Defendant raised no objection.
[10] Plaintiff knew no later than March 14, 2017, that Progressive had a policy requiring adjustors to make new offers when a reassessment of the settlement value increases the settlement range. *See* Doc. 20-1 at 6.

known the facts and theories raised by the amendment in the original pleading.") However, undue delay, standing alone, is not a basis for denial of a motion to amend. *DCD Programs, Ltd.*, 833 F.2d at 186; *United Tactical Systems, LLC v. Real Action Paintball, Inc.*, 2017 WL 1833201 (N.D. Cal. May 8, 2017); *Adan v. Insight Investigation, Inc.,* 2017 WL 1387243 (S.D. Cal. Apr. 18, 2017). Further, it appears that at least some discovery has already been conducted regarding Progressive's practices regarding making new settlement offers upon receipt of new information. It is not clear that any further discovery on the topic would be necessary or fruitful. *Cf. Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) ("A need to reopen discovery and therefore delay the proceedings supports a … finding of prejudice…."); *Heilman v. Cook*, 2017 WL 727672, *2 (S.D. Cal. Feb. 24, 2017) (finding prejudice only where the discovery period would have to be extended to accommodate discovery on newly alleged claims); *Weeks v. Union Pacific R.R. Co.*, 2017 WL 714368, *7 (E.D. Cal. Feb. 22, 2017) (same); *Ahmed v. Ringler*, 2017 WL 30017, *6 (E.D. Cal. Jan. 4, 2017) (same). Assuming that additional discovery is necessary, it is unlikely that any of the evidence relevant to any of the claims or defenses has been made unavailable as a result of the passage of time. To mitigate any possible prejudice to Progressive, the cost of any discovery (conducted by either party) related to DeFrenza's newly amended theory will be shifted to DeFrenza. *See Oushana v. Lowe's Home Ctr., LLC*, 2017 WL 2417198, *6 (E.D. Cal. June 5, 2017).

The Court will consider the First Amended Complaint amended to include DeFrenza's theory that Progressive acted in bad faith by failing to amend its settlement offer despite its practice or policy of doing so in like situations.

6. **Did Progressive Fail to Investigate DeFrenza's Claim in Bad Faith**

DeFrenza alleges in his complaint, and suggests in his opposition, that Progressive failed to adequately investigate or only pursued information that tended to undermine his claim. Both of those theories have legal footing. *See* Doc. 20 at 13-15.[11] However, DeFrenza has presented no

---

[11] The general contours of a failure to investigate claim are as follows:
An unreasonable failure to investigate occurs when an insurer fails to consider, or seeks to even discover, evidence relevant to the issues of liability and damages. *See Mariscal v. Old Republic Life Ins. Co*., 42 Cal. App. 4th 1617, 1624 (1996) ("An insurance company may not ignore evidence which supports coverage. If it does so, it acts unreasonably toward the insured and breaches the covenant of good faith and fair dealing."). Thus, the

16

evidence to substantiate his theory. As previously noted, the primary impediment to Progressive's investigation of this matter appears to have been absence of cooperation by DeFrenza or his former counsel in providing medical information. DeFrenza points to no information that Progressive failed to investigate and that Progressive should have considered in making its valuation. DeFrenza has failed to show that any question of material fact precludes resolution of this theory as a matter of law.

Summary adjudication on this theory will be granted in favor of Progressive.

### 7. **Did Progressive Act in Bad Faith by Offering an Unreasonably Low Initial Settlement Offer?**

Finally, DeFrenza contends that Progressive acted in bad faith by offering $152,791.00 to resolve his claims even though he suffered significant injuries. California law prohibits insurers from making unreasonably low settlement offers. *See* Cal. Code Regs., tit. 10 § 2695.7(g); *Brehm v. 21st Cent. Ins.*, 166 Cal.App.4th 1225 (Cal. Ct. App. 2008) (holding that insurer's "unreasonably low" settlement offer "in light of the medical evidence in its possession at that time" was evidence of bad faith). Ordinarily, the question whether the insurer has acted unreasonably in responding to a settlement offer is a question of fact to be determined by the jury. *Walbrook Ins. Co. v. Liberty Mutual Ins. Co.*, 5 Cal.App.4th 1445, 1454 (Cal. Ct. App. 1992). However, courts have rejected bad faith claims as a matter of law where a genuine dispute existed regarding the amount payable on the claim. *See, e.g.*, *Maynard v. State Farm Mut. Auto Ins. Co.*, 499 F.Supp.2d 1154, 1162 (C.D. Cal. 2007); *Rappaport-Scott v. Interinsurance Exchange of Auto. Club*, 146 Cal.App.4th 831, 838-839 (Cal. Ct. App. 2007) ("Despite the difference between the $7,000 offered by [the insurer] and the $33,000 later determined to be payable on the policy, the vast difference between the $346,732.34 in losses claimed by [the insured] and the $63,000 in actual losses as determined by the arbitrator demonstrates, as a matter of law, that a genuine dispute exited as to the amount

---

insurer may not just focus on those facts which justify denial of the claim. *Wilson [v. 21st Cen. Ins. Co.*, 42 Cal. 4th [713,] 721 [(2007)]. Rather, the insurer must "fully inquire into possible bases that might support the insured's claim." Otherwise, the insurer acts unreasonably and in bad faith. *Williams vs. Allstate Ins. Co.*, CV 09–01023 MCE, 2010 U.S. Dist. LEXIS 135407, at *13 (E.D. Cal. 2010) (citing *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1072 (2007)).
*Duitch v. Travelers Ins. Co.*, 2017 WL 3579695, *5 (C.D. Cal. Aug. 1, 2017).

payable," defeating the bad faith claim.)

The record before the Court is silent as to the medical costs incurred on the date that Progressive made its initial settlement offer, September 17, 2013. The record includes calculations by two different Progressive employees regarding the estimated value of the complaints of injury by DeFrenza. Doc. 16-1 at 78-85. The two calculations yielded ranges of $152,791 to $327,791, and $219,942 to $294,742, each prorated for the coverage to be provided by AAA. Doc. 16-1 at 78, 84. Those calculations incorporated payments for loss of earnings, shoulder surgery costs, potential future back surgery costs, injuries not requiring surgery, and medications, all premised upon incomplete medical records in Progressive's possession at the time. Doc. 16-1 at 78-85. Those calculations also considered the extent to which DeFrenza's injuries might have been caused by a pre-existing degenerative condition, unrelated to the accident. *See* Doc. 16-1 at 83.

DeFrenza has submitted no evidence that would tend to suggest that Progressive's valuation range or offer were unreasonable or made in bad faith. *Cf. Hicks v. Progressive Casualty Ins. Co.*, 686 Fed.Appx. 417, 418 (9th Cir. 2017) (holding that a settlement offer of $5,500 was unreasonably lower where the undisputed facts showed it was worth between $175,000 (by the insurer's estimate) and $200,000 (by the arbitrator's estimate).) The Court has no way of concluding whether or not the initial Progressive settlement offer was unreasonable in light of the evidence possessed by Progressive at the time that the offer was made. Based on the evidence submitted a jury could not reasonably conclusion that the settlement offer made was unreasonably low.

Based on the foregoing, summary adjudication on this theory will be granted in favor of Progressive.

**ORDER**

Accordingly, it is hereby ORDERED that Progressive's motion for summary judgment is GRANTED in part and DENIED in part as follows:

1. DeFrenza's theory that Progressive acted in bad faith by failing to immediately pay out the initial settlement amount of $152,791 is adjudicated in favor of Progressive;

2. DeFrenza's theory that Progressive acted in bad faith by delaying in making its initial

settlement offer is adjudicated in favor of Progressive;

3. DeFrenza's complaint is deemed to be amended to include the theory that Progressive acted in bad faith by failing to make no settlement offers in violation of its policy requiring that such offers be made when new evidence is obtained that would impact the calculation;

4. DeFrenza's theory that Progressive acted in bad faith by failing to adequately investigate or investigating only facts likely to defeat DeFrenza's claim is adjudicated in favor of Progressive;

5. DeFrenza's theory that Progressive acted in bad faith by making an unreasonably low initial offer is adjudicated in favor of Progressive.

The parties are directed to meet and confer within five (5) days of the date of this order to resolve whether additional discovery is required. The parties shall file a joint status update by November 20, 2017 at 4:00 p.m., regarding the need for additional discovery. Assuming that no additional discovery is required, the Court will hold a pretrial conference on December 5, 2017 at 1:30 p.m.

IT IS SO ORDERED.

Dated:   November 14, 2017                    _____
                                              SENIOR DISTRICT JUDGE

19